will finally, for the morning, call Appeal 23-2480, Pilar Sandoval Reynoso v. Garland. We're going to begin with oral argument. Mr. Thoman, from you. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Daniel Thoman, and I represent the petitioner, Pilar Sandoval Reynoso. In this appeal, petitioner raises two issues before this Court. First, whether the Board of Immigration Appeals deprived him of his Fifth Amendment rights to the conduct of the proceedings. And second, whether the Board of Immigration Appeals erred as a matter of law and abused its discretion in denying petitioner's application for relief, as well as his motions to remand and reopen. Beginning with the issue of due process Fifth Amendment rights, the government raises some valid issues with that, especially with regard to the letter, I'm sorry, the documents that were considered by the judge at the initial hearing. The government does correctly point out that that could have been raised to the Board in the context of regulatory and statutory violations, and was not. And they also correctly point out that the proceedings did go forward, and the prejudice prong of that analysis is impacted by that. So, on the basis of that immigration judge relying on information that was not made available to the petitioner, we are not arguing today that that forms a viable argument for a Fifth Amendment due process violation. However, the following points that we do want to continue to proceed on today, taken together, show that the procedure itself, the way that evidence was considered or not considered as a whole, means that the meaningful opportunity to be heard was not given. In front of the IJ or the Board? Both, Your Honor, depending on different issues. There are a few different things that overlap a little bit, and I'm going to do my best to try to keep those separated, even though I may revisit some things as they come up in other contexts. So, with regard to the second argument about the errors of law and abuse of discretion, that's where the issues that arose and essentially the meat of the case really comes up. There are three primary issues that we find that we consider to have been error. First is the issue of continuous physical presence. With regard to that, a lot of the argument turns on the immigration judge's characterization of certain voluntary returns as departures that broke the continuous physical presence issue. There is also the related issue of the stop time rule in light of Ortiz-Santiago and Ms. Chavez. Much of the argument in this case has revolved around the issue of when the request to terminate based on the improper MTA notice to appear came out, whether that actually stopped the clock or not. The immigration judge in that regard noted that at the time Ms. Chavez was pending and could affect the outcome. The government correctly points out that Ortiz-Santiago had already been decided, so the argument could have been made earlier. But as far as that goes, whether the stop time issue applies, whether the continuous physical presence was established, the board did not actually address that issue. The immigration judge did and found that it had not. So the reason that I still want to note that for this court is that should this court determine that remand to the board is warranted, that is an issue that they've not previously addressed and they should consider it because that is part of the statutory eligibility. And it was a big basis for the petitioner's initial appeal to the board from the immigration judge's decision. It also does surface in some other contexts, which I will get to shortly. So again, this is where the interrelated issues come up. Mr. Toman, if I could ask you a question. Yes, I'm sorry. So the immigration judge goes through the eligibility analysis, determines that there's no eligibility, but then says, you know what, I'm going to assume eligibility and then lays out kind of the judge's findings as to whether or not within the judge's discretion he would grant cancellation of removal. Given that alternative independent basis for the holding, do we have jurisdiction to consider this case? I believe so, Your Honor, and actually discretion was something I was going to get to, but I'll address it now. Your Honor is correct. The immigration judge and the board also used that escape valve, if you will, on discretion, which ordinarily would make the case unreviewable anyway. However, discretion is not – well, let me take a step back. I'm sorry, Your Honors. As the government has made us all aware, the Supreme Court recently ruled in the Wilkinson case, which relied heavily and reaffirmed much of Guerrero-Las Priegas. Now, that was a different context. That was in the context of mixed questions. But in Guerrero-Las Priegas, as noted in Wilkinson, the issue came up of if an issue is primarily legal and only partly factual, is it really a mixed question? And in Guerrero-Las Priegas, the court rejected that argument. As quoted in Wilkinson, that reasoning would forbid review of any BIA decision applying a properly stated legal standard irrespective of how mistaken that application might be. So when it comes to the discretionary decision, that has to be based on correct facts, and in this case, they were not. Significantly – and this actually is one of the ways that continuous physical presence re-emerges – the immigration cited as the biggest negative discretionary factor, the repeated violations of immigration law. The immigration judge stated that if it was the criminal history alone, the 2003 non-criminal drunk driving offense, that would not be enough. But the immigration violations are what did it. That was the main factor. So it's very important that the judge have a clear understanding of what those violations were. The immigration judge describes them as something other than the way that the petitioner described them, and that first emerges in the continuous physical presence issue. When these voluntary returns took place, did he know what was happening? Was he aware of what removal proceedings were? Did he realize what the actual consequences would be? The immigration judge, despite that evidence in the record that he did not, assumes the worst and essentially interprets those violations, which were just entries to that inspection. Five of them, I believe, in a four-year span. He takes those as flagrant violations of immigration law sufficient for finding adversity on good moral character 20 years later despite all the positive equities in the case. So that's an incorrect fact on that basis. And additionally… What's incorrect factually about it? I understand that your client would disagree with the ultimate conclusion, but what's the factual error? In the context of continuous physical presence, Your Honor, the immigration judge, one of the things that he stated was essentially that these cut off the time by themselves because he knew that there were going to be proceedings and he knew that he could have seen a judge. And the respondent actually stated the opposite. He made it pretty clear during his testimony and actually in cross-examination that he did not understand. He had a different understanding of what was actually going on. However, the judge disregarded the testimony and instead just read it the way that he felt it should have been. And that formed the basis of his finding that this was a very significant issue enough that 20 years later he should be denied the application as an exercise of discretion. I see that my time is expiring. You may reserve the remainder. Thank you, Mr. Tolman. Ms. Antwon will recognize you now for argument on behalf of the government. Good morning. May it please the Court. My name is Monica Antwon on behalf of the Attorney General. To respond first to the argument regarding continuous presence, that issue is not before the Court because the Board did not affirm it, nor was it necessary for the Board to reach continuous presence when the other determinations were dispositive. As far as discretion and the effect of the voluntary returns, the legal effect of the voluntary returns is not relevant to discretion. What the IJ was concerned about was the repeated departures after encounters with Border Patrol and the repeated reentries into the United States. It didn't really matter at that point. The legal effect only matters as far as continuous presence goes. Once we determined that those returns did, in fact, occur as he produced the I-213s and testified about them, the IJ properly considered them, properly weighed the equities. What he's really disagreeing with is the weighing of the equities, and the Court does not have jurisdiction to review that. Ultimately, the Court's jurisdiction is very limited as far as reviewing the denial of cancellation in that the Court does not have jurisdiction to review the discretionary determination, and that is in footnote 4 of Wilkinson that's confirmed, nor does it have any jurisdiction to review any disputed factual findings or the weighing of the equities. Once we've confirmed that the IJ relied on facts in the record, it was a legally sound dispositive discretionary determination, the Court can end its review of the cancellation claim. Preliminarily, the Court would have to address the objection to the NTA, which the government's position is that it's untimely. Mr. Sandoval has not excused the delay, nor did he demonstrate prejudice. So for those reasons, the Court should deny in part and dismiss in part the petition for review. The other argument that's made is that the Board entirely ignored a category of evidence, the evidence regarding the lack of special education opportunities or alleged lack of educational opportunities in Mexico. But I don't see the Board as having categorically disregarded it at all. It talked about it, and it talked about it by effectively or functionally adopting the immigration judge's analysis of it, and the immigration judge went into depth on it. Yes, that's exactly what the Board did. So if the Court were to review hardship, which is, of course, reviewable after Wilkinson last week, again, without reviewing any disputed factual findings, but whether the Board, the agency, properly reviewed all the evidence. And the Board's review shows that it did review the IJ's decision. The IJ discussed that evidence in depth of the availability of those services in Mexico, and the Board's affirmance shows that it considered that argument. And, therefore, under a deferential standard of review, the Court could also affirm the hardship determination on the basis of the facts in the record. So Mr. Tillman referred to the alternative ruling, exercising discretion, as he calls an escape hatch. And that kind of brings to mind this question, and you probably don't know the answer to this question, but you're here, so I'm going to ask you, which is, of recent vintage, are there any decisions by the immigration judge that found ineligibility based upon the factors without doing discretionary analysis? Or is this just a way to avoid appellate review? In my experience, I've come across a few cases where there are both statutory eligibility analyses and discretionary. I don't recall just anecdotally ever having seen where they skip over the eligibility requirements and go to discretion. And, in fact, I think that, overall, the IJs try to cover as many of their bases as they can so that they don't get reversed by the Board or by the courts. And, in fact, the IJ did go through every statutory eligibility requirement, and only after that went through discretion. So, in my experience, I'm not familiar with any cases where the IJs skip over eligibility completely and go to discretion. I think it would have to be pretty egregious for them to get there. Thank you. Thank you, Ms. Anton. Thank you. Mr. Tolman will recognize you now for rebuttal argument. Your Honors, the continuous physical presence, I think I explained correct. This is not before the court directly, but it does come up in other contexts. As far as discretion and the difference between the returns and the nature of the departures, it is actually significant in this case because the immigration judge specifically said the most serious negative factor is he chose to voluntarily return to Mexico despite knowing that he had the option of fighting his case in immigration court. And it's not clear at all from the transcript that he actually knew that. Regarding the issue of the special ed availability, that is an issue that can be addressed on remand because you basically have two conflicting documents from the Department of State. The country conditions report says they're nationwide. The same could be said of the U.S. But we all know that there are areas of the country where special education is not available despite the nationwide availability. It doesn't so much contradict the other State Department documents saying that in this town there is no special ed and it was only from a year earlier. I see that my time has expired if there are no additional questions. Mr. Tolman, we do want to address the related case. We're here on 23-2480. 24-1236 ended up being dismissed on your and your client's petition, correct? Yes, Your Honor. We asked you to be prepared to discuss the matter of the order to show cause at oral argument. You did file a response to that order to show cause on March 14. There was some underlying confusion from the court's end as to a response date, whether it be March 1st or March 6th. Ultimately, neither of those dates were complied with. You did file that response on March 14th. The panel has had an opportunity to review that. We want to give you a chance now to make any further statement you wish to with regard to 24-1236, the order to show cause, the response, etc. Thank you, Your Honor, for the opportunity. The reasons stated in my response are essentially it. Just as the court was confused with the dates, I was also confused with the dates. When the emails came up, I just swapped them over. By the time I caught the mistake, and by the way, I was at the same time trying to figure out how to correct, how to set up the voluntary dismissal because I couldn't reach my client. All of this is in the motion. But when the government brought to my attention the incorrect date of the BIA's decision in that case, I was trying to fix that at the same time. So it was essentially just human error on my part. The dates were very close together, and I was essentially playing catch-up on what the last thing was. Then when the order came out, that obviously took some precedence, and that's essentially all it is. It's human error. There was no intent to disregard deadlines or this court's orders in any way, shape, or form, and I'm apologetic. Thank you. No further questions. Thank you, Mr. Thoman. Thank you, Ms. Antwon. The case will take another advisement. Thank you, Your Honor. That will complete the court's hearings for the morning. Thank you.